IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JOSE REYES-ALICEA (1)<br>EDGARDO MELENDEZ-SILVA (2)<br><br>    Defendant. | CRIMINAL NO. 16-751 (PAD) |

## MEMORANDUM AND ORDER

Delgado-Hernández, District Judge.

This case involves allegations of serious misconduct by defendants as officers of the San Juan Drug Division of the Puerto Rico Police Department ("PRPD"). Before the court is the "United States of America's Motion for Stay and Revocation of Bail Order or for Stay of Bail Order and Request for *De Novo* Bail Hearing" (Docket No. 24). For the reasons explained below, defendants shall be detained without bail pending trial.

### I.    BACKGROUND

On December 1, 2016, defendants were charged with possession with intent to distribute cocaine and with carrying firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) and 21 U.S.C. § 846. On December 15, 2016, an arraignment/detention hearing was held before U.S. Magistrate Judge Camille Vélez-Rivé (Docket No. 34). After hearing arguments from both sides, the Magistrate Judge authorized defendants' release on bail with home incarceration and other conditions. Id. The same day, the government moved for stay and revocation of the bail orders, and requested a *de novo* bail hearing (Docket Nos. 23, as to Reyes-Alicea and 24, as to Meléndez-Silva).

United States of America v. José Reyes-Alicea (1), *et al.*
Criminal No. 16-751 (PAD)
Memorandum and Order
Page 2

On December 15, 2016, the court granted in part the government's motion, staying defendants' release pending a *de novo* determination, and set a *de novo* hearing for December 20, 2016 (Docket Nos. 26 and 27). The hearing was held as scheduled (Docket No. 40). The government proceeded via proffer and the parties argued their positions. Based on the information received during the hearing, the court ordered that defendants remain or be kept under custody pending further record review. Id. The court has carefully reviewed the record in its entirety, listened to the recording of the arraignment/detention hearing held before U.S. Magistrate Judge Vélez-Rivé, and is persuaded that defendants should be detained without bail pending trial.

## II.   STANDARD OF REVIEW

The Bail Reform Act of 1984, 18 U.S.C. §§ 3141-3156, permits detention of a defendant pending trial if no condition or combination of conditions will reasonably assure the appearance of the person as required or the safety of any other person and the community. 18 U.S.C. §§ 3142(b) and (e). The government must establish risk of flight by a preponderance of the evidence; and/or dangerousness by clear and convincing evidence. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001); United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991).

Where probable cause is found to believe that a defendant has committed a crime listed or in the circumstances set forth in 18 U.S.C. § 3142(e), a rebuttable presumption arises that no conditions or combination of conditions exist that will reasonably assure the appearance of the defendant and the safety of the community. A grand jury indictment on a covered offense is enough to demonstrate probable cause for purposes of triggering the presumption. United States v. Vargas, 804 F.2d 157, 163 (1st Cir. 1986); United States v. Holland, 922 F.Supp.2d 70, 71 (D.D.C. 2013).

Once triggered, the presumption imposes on the defendant a burden of production. United States v. O'Brien, 895 F.2d 810, 814-815 (1st Cir. 1990). The burden is not heavy. United States

v. Stone, 608 F.3d 939, 946 (6th Cir. 2010). It is satisfied introducing at least some evidence contrary to the facts presumed. Id. Rebuttal evidence does not burst or destroy the presumption, which does not disappear, maintaining evidentiary weight. United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); O'Brien, 895 F.2d at 814-815.

So conceived, the presumption represents Congress' general factual view about special risks of danger to the community and flight risks presented by defendants who commit crimes to which the presumption attaches. United States v. Bess, 678 F.Supp.929, 934 (D.D.C. 1988). In those cases, the court must weigh the evidence, giving the presumption the value of evidence, and determine upon which side the evidence preponderates. United States v. Jessup, 757 F.2d 378, 383 (1st Cir. 1985).

The government retains the burden of persuasion throughout, in both presumption and non-presumption cases. Stone, 608 F.3d at 946; Bess, 678 F.Supp.929 at 932. To determine if it has met that burden, the court must consider: (1) the presumption (if applicable); (2) the nature and circumstances of the offense; (3) the weight of the evidence; (4) the history and characteristics of the defendant; and (5) the danger posed to the community by defendant's release. 18 U.S.C. § 3142(g); Jessup, 757 F.2d at 384. Review of a magistrate judge's release order is *de novo*. United States v. Tortora, 922 F.2d 880, 883 n.4 (1st Cir. 1990). The court must state in writing the reasons for the action taken. United States v. Moss, 887 F.2d 333, 338 (1st Cir. 1989); O' Brien, 895 F.2d at 813.

### III. DISCUSSION

A. PRESUMPTION

The statutory presumption applies here. As previously mentioned, it is triggered in connection with offenses listed in 18 U.S.C. § 3142(e). These include offenses under 18 U.S.C.

924(c)(use of firearm in crime of violence or in drug trafficking crime). And defendants have been charged with possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A).[1]

Defendants claim they rebutted the presumption. Mr. Reyes-Alicea asserts that he is innocent, has a clean record, and even though he was a member of the PRPD's San Juan Drug Division, the day of the arrest he was no longer a member of that Division but instead was working at PRPD headquarters (Transcript at pp. 28-29). Mr. Meléndez Silva points out that he is a 13-year veteran of the PRPD with a clean record. Id. at p. 10. He denies the allegations against him, states that when summoned to appear during the investigation of this case he appeared every time; and never threatened witnesses. Id. at pp. 10, 13. He lives with his wife; has no foreign ties; has always kept up his income tax returns; surrendered his passport; and has met the conditions imposed by the Magistrate Judge (Transcript at pp. 9-10, 13; Docket No. 25 at p. 3). Because the burden is one of production and is not heavy, the court will assume that the presumption has been rebutted and by extension, that it retains evidentiary weight to be evaluated along with the criteria set in 18 U.S.C. § 3142(g). These are discussed below.

B. DETENTION FACTORS

1. Nature and Circumstances of Offense

As stated above, defendants were charged with possession with intent to distribute cocaine and with carrying firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) and 21 U.S.C. § 846. At the time of the offenses charged, both defendants were

---

[1] Mr. Meléndez-Silva does not agree that the presumption applies because he is a police officer assigned to a drug unit and, as such, had to be armed (Transcript at pp. 10-12). He argues that what the law has in mind is persons that are conspiring and have possession of large or small quantities of drugs, and are armed to protect the dealings of the drug dealers. Id. at p. 12. The Bail Reform Act does not, however, make exceptions for police officers or police officers such as defendants, assigned to drug units.

sworn police officers of the PRPD's San Juan Drug Division (Transcript at p. 2). They participated in an illegal entry into an apartment which they believed contained controlled substances and possibly money because there had been information received from an anonymous tipster that the apartment was being used by a big drug dealer. Id. at pp. 2-3. Defendants knew there was no search warrant authorizing the entry. Id. at p. 3. Mr. Reyes-Alicea went into the master bedroom, found a safe containing approximately $28,000 to $30,000, and with other police officers that were inside the bedroom stole the money. Id. In the bedroom there was about an 8th of a kilogram of cocaine that was stolen and was later sold for a profit split between Mr. Reyes-Alicea and another police officer. Id. at pp. 3-4. During the intervention, defendants had their service weapons as was customary for them. Id. at p. 4. They knew they were in a dangerous situation because they were stealing from a drug dealer. Id.

Mr. Meléndez-Silva paid a witness to prepare fraudulent search warrant affidavits to be presented to state judges in order to obtain search warrants for certain locations. Once the searches were executed, he would pay the witness with proceeds or whatever was stolen during the search using the search warrant the witness had prepared. Id. at pp. 5-6. Similarly, Mr. Reyes-Alicea received tips from informants that he had on the street about stash locations for drugs, money or weapons; would provide those tips to other PRPD officers who would then go to those locations to steal the drugs, money or the weapons; and they, in turn, would pay Mr. Reyes-Alicea for that information with proceeds from whatever they stole (Transcript at p. 6). The offenses expose defendants to a maximum term of life in prison.[2] The nature and circumstances of the offenses charged favor detention.

---

[2] For present purposes, the court is entitled to rely on maximum statutory terms of imprisonment. United States v. Moss, 887 F.2d 333, 336 (1st Cir. 1989).

United States of America v. José Reyes-Alicea (1), *et al.*
Criminal No. 16-751 (PAD)
Memorandum and Order
Page 6

    2.  <u>Weight of Evidence</u>

The government proffered that at least four witnesses with firsthand knowledge will testify that defendants participated in an illegal entry of the apartment (Transcript at p. 2). One witness will testify about the events in the apartment; that defendants went to the location; had knowledge of the possibility that controlled substances and money would be found in the apartment; knew there was no search warrant to go into the apartment; and had their service weapons with them knowing they were stealing from a drug dealer. <u>Id.</u> at p. 3. That same witness will testify as to Mr. Reyes-Alicea's intervention in the master bedroom; about the money and cocaine found in the apartment; and as to how Mr. Reyes-Alicea, other police officers and the witness stole the money. Similarly, at least two witnesses will testify that Mr. Meléndez-Silva had an 8th of a kilogram of cocaine on him after the intervention, and the same day tried to sell or tried to give the cocaine to a witness to sell. <u>Id.</u> at p. 4. A witness will testify from personal knowledge about how Mr. Meléndez-Silva would pay to prepare search warrant affidavits, <u>id.</u> at p. 5., and about Mr. Reyes Alicea's receipt and sharing of tips, and receipt of money from proceeds stolen from the locations to which the tips referred. <u>Id.</u> at p. 6.

Mr. Reyes-Alicea asserts he was following orders of a superior officer, who summoned him to go into the apartment because there was information regarding contraband in the apartment (Transcript at p. 26). So they went in and searched. <u>Id.</u> But states he is innocent. <u>Id.</u> Mr. Meléndez-Silva points out that drug agents talk to information sources. <u>Id.</u> at p. 9. He states he helped other agents, prepared affidavits, conducted surveillance, and intervened in drug points, for that was his job. <u>Id.</u> at pp. 14-15. He avers he was summoned by superior officer "to be there" and to be on the perimeter "to make sure no danger occurs to the officers inside the house," yet there was absolutely no proffer that he led the entry team or was part of the entry team that seized

the drugs. Id. at p. 21. In the same way, he observes that PRPD regulations mandate that police officers have their weapons 24/7; if he did not do so he would not be complying with his duties, id. at pp. 10-12; and he has not been charged with incidents involving false affidavits or with trying to sell cocaine. Id. at 15.

What defendants bring forth is not inconsistent with a finding of guilt. See, United States v. Gray, 529 F.Supp.2d 177, 181 (D.Mass. 2007)(so noting in rejecting claim that weight of evidence was weak). Compare that situation with the one evaluated in United States v. Torres-Rosario, 600 F.Supp.2d 327, 334 (D.P.R. 2009), where the only witness against the defendant failed to identify him in court during the bail hearing even though he was the only person in the courtroom dressed in an inmate jumpsuit and was sitting at the defense counsel table next to his attorneys. If the government's witnesses were believed by the fact finder during trial, what the government has proffered will be established.[3] The weight of the evidence favors detention.

    3. History and Characteristics of the Defendant.

The Bail Reform Act directs the court to consider elements related to the defendant's history and characteristics such as employment, length of residence, community ties, criminal history, and drug and alcohol use. 18 U.S.C. § 3142(g)(3). According to the Pretrial Services Report, Mr. Reyes-Alicea has been with the PRPD for 12 years (Pretrial Services Report, Reyes-Alicea at p. 2). He was born in Guayama, Puerto Rico. Id. at p. 1. Mr. Meléndez-Silva has been with the PRPD for 13 years (Pretrial Services Report, Meléndez-Silva at p. 1). He was born in Bayamón, Puerto Rico. Id. Defendants have no prior criminal record, and reported no history or

---

[3] As for Meléndez-Silva's assertion that he did not enter the apartment, the government counters that he did enter into the apartment to clear it, and then remained in the area of the perimeter with his service weapon (Transcript at p. 18).

Case 3:16-cr-00751-PAD   Document 46   Filed 01/12/17   Page 8 of 9

United States of America v. José Reyes-Alicea (1), et al.
Criminal No. 16-751 (PAD)
Memorandum and Order
Page 8

illegal use of controlled substances. They have lived in Puerto Rico all their lives, and have strong ties to the community (Pretrial Services Report, Reyes-Alicea at p. 4; Pretrial Services Report, Meléndez-Silva at p. 4). Mr. Meléndez-Silva has two relatives in Orlando, Florida (Transcript at p. 14), and one family member in Boston. Id. at p. 17. Mr. Reyes-Alicea travelled to Orlando on a vacation between 2013 and 2014, id. at p. 29, whereas Mr. Meléndez-Silva traveled to the Dominican Republic in April 2016. Id. at p. 16. The personal history and characteristics of the defendants favor release.[4]

    4.   The danger posed to the community by defendant's release

Mr. Reyes-Alicea asserts that if he is in home detention 24/7, he will not put people in danger (Transcript at p. 27). He states one of the conditions set by the Magistrate Judge is that there be no weapons in the house. Id. He claims that even if at one time he had contacts as a member of the drug division of the PRPD, those contacts no longer exist. Id. at pp. 27, 28. Mr. Meléndez-Silva expresses that based on the Indictment, the events occurred in December 2011; and since that time, he has done nothing but his job, receiving commendations for his work (Transcript at p. 22). He alleges that he has been serving the community, and is not a danger to anybody. Id. at pp. 13-14, 22.

From the government's proffer, defendants were police officers who violated the law taking advantage of their positions of trust to possess with intent to distribute cocaine, using their service weapons in furtherance of a drug trafficking crime. They did so notwithstanding their link to their families and communities. Their word disclaiming dangerousness has been seriously

---

[4] During the hearing, the government expressed that "at this moment" defendants probably do not pose a risk of flight (Transcript at pp. 8-9). Given the government's position, the court will not examine this aspect of the detention analysis.

United States of America v. José Reyes-Alicea (1), *et al.*
Criminal No. 16-751 (PAD)
Memorandum and Order
Page 9

compromised. Considering their former position as police officers, their background in weapons handling, and their contacts with people involved in drug points and other criminal activity, their release would be dangerous to the community. Drug offenses pose a special risk of dangerousness to society. United States v. Lattner, 23 Fed. Appx. 363, 364 (6th Cir. 2001). And the drug charge is "further aggravated by the weapons charge against the defendant[s]." United States v. Vega-Sosa, 2011 WL 693606, *2 (D.P.R. Feb. 24, 2011).

## IV.   CONCLUSION

Having carefully considered all the evidence in this matter as well as the available range of release conditions, the court concludes that the government has shown, by clear and convincing evidence, that no condition or combination of conditions will reasonably assure the safety of the community and its members if defendants are released.

The nature and circumstances of the offenses charged, the weight of the evidence, and the danger posed to others if defendants were released, together outbalance other elements in their personal and history and characteristics arguably supporting release even under the conditions that the Magistrate Judge set. The evidentiary weight of the rebutted presumption (assuming it was so rebutted), lends support for this conclusion. Therefore, defendants shall be detained without bail pending trial.

**SO ORDERED.**

In San Juan, Puerto Rico, this 12th day of January, 2017.

S/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge